UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CARLOS SARAVIA,

|  |  |
|---|---|
| Plaintiff, | **MEMORANDUM AND ORDER** |
| -against- | 19-2086 (DRH) (SIL) |

ROYAL GUARD FENCE CO., INC., GIN-SKYE
CONSTRUCTION INC., RALPH GUERCIA,
AND BRENDA STOLLINGS,

Defendants.
------------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

By way of Complaint dated April 10, 2019, Plaintiff Carlos Saravia ("Plaintiff or "Saravia") commenced this action against Defendants Royal Guard Fence Co., Inc. ("Royal Guard"), Ralph Guercia ("Guercia Sr." and together with Royal Guard, the "Royal Guard Defendants"), Gin-Skye Construction Inc. ("Gin-Skye"), and Brenda Stollings ("Stollings," together with Gin-Skye, the "Gin-Skye Defendants") (the Gin-Skye Defendants together with the Royal Guard Defendants, "Defendants") seeking, *inter alia*, unpaid overtime pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. and New York Minimum Wage Act, N.Y. Lab. Law § 650 *et seq*., and related regulations, and recovery for improper wage deductions, failure to provide proper wage notices and unpaid wages under the New York Labor Law, N.Y. Lab. Law § 190 *et seq*.

Presently before the Court are the parties' cross-motions for relief following the Court's January 9, 2020 evidentiary hearing to address Plaintiff's allegations of

1

Defendants' improper conduct during settlement negotiations. *See* Docket Entries ("DEs") [22]-[25]. Saravia seeks sanctions pursuant to Federal Rule of Civil Procedure 11 ("Fed. R. Civ. P. 11") and the Court's inherent authority. *See* Plaintiff's Brief Following the January 9, 2020 Hearing Before this Court ("Pl. Mem."), DE [22], 1. In addition, Plaintiff seeks an order compelling further submissions from Defendants concerning their conduct in relation to the January 9, 2020 hearing. *See id.*, 1.

Defendants seek dismissal of this lawsuit and a statement as to whether Plaintiff seeks to continue being represented by his current counsel. *See* Defendants' Royal Guard Fence Co., Inc. and Ralph Guercia Post-Hearing Letter Following the January 9, 2020 Hearing ("Royal Guard Defs. Mem."), DE [23], 1, and Defendants' Gin-Skye Construction Inc. and Brenda Stollings Post Hearing Memorandum Regarding the January 9, 2020 Hearing ("Gin-Skye Defs. Mem."), DE [24], 1. Further, the Royal Guard Defendants seek to amend the caption so that non-party Ralph Guercia, Jr. ("Guercia Jr.") is substituted for his father Defendant Guercia Sr. *See* DEs [28]-[35]. For the reasons set forth below, Plaintiff's motion is granted in part and denied in part and Defendants' motions are denied.

Following an initial conference before this Court, *see* Minute Order for Proceedings held before Magistrate Judge Steven I. Locke, DE [12], Plaintiff's Counsel, Abdul Hassan ("Hassan"), filed a letter wherein he raised concerns that Plaintiff, without Hassan's knowledge, and Defendants improperly entered into a settlement agreement that evaded Court approval as required by *Cheeks v. Freeport*

2

*Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) ("[S]tipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect."). *See* Issues under Cheeks, etc., ("Cheeks Letter"), DE [15]. Hassan's cause for concern was a letter dated September 4, 2019 that he received with Plaintiff's signature, ("Saravia Letter"), DE [15-1], which states that Saravia no longer wishes to be represented by Hassan or participate further in this lawsuit. The Saravia Letter further states that Plaintiff wants to drop his lawsuit because the facts in the complaint do not reflect the facts he provided his counsel and are thus inaccurate. *See* Saravia Letter.

Adding to Hassan's concern was the fact that he received an almost identical letter from a different client in a prior case against the same defendants with the same counsel. *See Velasquez v. Royal Guard Fence Co., Inc. et al.*, No. 18-cv-07360, ELECTRONIC ORDER DISMISSING CASE, dated July 23, 2019; Cheeks Letter. Hassan alerted counsel for the Royal Guard Defendants, Richard Ziskin ("Ziskin"), and the Gin-Skye Defendants, Vincent Pallaci ("Pallaci"), of the Saravia Letter in an email dated September 24, 2019 ("Letter Email"), DE [25-1]. The email advises Ziskin and Pallaci that Hassan received a letter in this case similar to that in the *Velasquez* matter, but did not include a copy of the Saravia Letter. *See* Letter Email.

At a subsequent status conference, the Court scheduled an evidentiary hearing for December 10, 2019, which was later adjourned to January 9, 2020, *see* Electronic Order granting DE [19] Motion to Adjourn Conference, dated December 5, 2019, to address the circumstances surrounding the purported settlement and to determine

whether Defendants engaged in any improper conduct.  *See* Minute Order for Proceeding held begore Magistrate Judge Steven I. Locke, ("November 20, 2019 Minute Order"), DE [18]; Transcript of Civil Cause for Conference Before the Honorable Steven I. Locke ("Conf. Tr."), DE [21], 8:1-7.

## I. THE HEARING

Three witnesses testified at the evidentiary hearing: Saravia, non-party Guercia Jr. and Stollings, who is engaged to Guercia Jr.  *See* Transcript of Hearing Before the Honorable Steven I. Locke United States Magistrate Judge ("Hearing Tr."), DE [22-3]; Declaration of Brenda Stollings ("Stollings Decl."), DE [24-2], ¶ 9. Plaintiff worked for both Royal Guard and Gin-Skye.  Hearing Tr., 7:14-25; 8:1-10. According to Saravia, he worked as a construction laborer for Defendants, which were in the business of construction and repair of roadways.  *See* Complaint, DE [1], ¶¶ 14, 17.  He was also a driver for Royal Guard.  Hearing Tr., 7:19-20.  Guercia Sr. is the President and majority shareholder of Royal Guard, Declaration of Ralph Guercia, Sr., DE [23-2], ¶ 1, and Stollings is the President and sole shareholder of Gin-Skye, Stollings Decl., ¶ 1.  Guercia Jr. testified that he worked for Royal Guard, but after it closed down in 2018, he went to work for Stollings at Gin-Skye.  *Id.*, 39:24-25; 40:1-3; 42:11-18; 43:8.  According to Saravia, Guercia Jr. gave him job assignments when he worked for both companies.  *Id.*, 28:11-25; 29:7-9.

At the outset, the Court notes that there were numerous inconsistencies in the testimony and declarations filed with the post-hearing briefs.  The parties agree that Saravia and Guercia Jr. met three times:  on August 31, 2019, September 7, 2019,

and either September 9 or 10, 2019. *See id.*, 12:10-18; 13:17-25; 14:1; 21:21-23; 56:4-11; 60:20-25; 61:1-2; 73:21-25. Saul Gonzales ("Gonzales"), who also worked for Guercia Jr. and is the godfather to Plaintiff's son, was present at the second meeting. *See id.*, 13:17-25; 14:1.[1] The record does not address whether Gonzales was working for Guercia Jr. at Royal Guard, Gin-Skye, or both at the time, although Plaintiff testified that after he applied for a job at Royal Guard, Gonzales brought him there. *See id.* 7:16-18.

According to Saravia, at the first meeting Guercia Jr. discussed the lawsuit, offered Plaintiff his job back, and told him (Plaintiff) that they should reach an agreement. *See id.*, 13:3-16. According to Guercia Jr., it was Plaintiff who asked about returning to work, and he (Guercia Jr.) responded that it was not his decision to make because he is just a field supervisor, and he would have to take the request back to the owner, Stollings, which he did between the first and second meetings. *See id.*, 58:16-25; 59:1-5; 60:16-25; 61:1-19.

Saravia testified that at the second meeting, Guercia Jr. said he would give him his job back. *See id.*, 19:18-24. Further, although he was not initially offered any money, at his request, Guercia Jr. offered him $3,000, and the two settled on $4,000. *See id.*, 20:1-3, 7-14. Ultimately, Plaintiff received neither. *See id.*, 20:11-15. Finally, according to Saravia, Guercia Jr. gave him a letter which he took home, signed, made a copy of, and dropped off with Gonzales, who then brought the letter

---

[1]       At the November 20, 2019 status conference, the Court requested that Gonzales be present to testify. *See* November 20, 2019 Minute Order. Nevertheless, he was not at the hearing. *See* Hearing Tr.

to Guercia Jr.  *See id.*, 20:21-25; 21:1-10.  Saravia does not describe the contents of the letter.  *See id.*  Nevertheless, Gonzales came back to him and told him that there was something wrong with the letter, leading Plaintiff to go to Guercia Jr.'s office on September 9, 2019 to sign it again.  *See id.*, 21:10-23.

Guercia Jr.'s version of the second meeting also differs.  According to Guercia Jr., he informed Plaintiff that he could not guarantee him a return to work, would discuss with Stollings compensation in the form of a "vacation fund," but there was no set agreement that Plaintiff would be paid.  *See id.,* 62:7-25; 63:1-3, 63:15-24.  Further, Guercia Jr. stated incredibly that he did not promise or offer anything in exchange for Saravia dropping the lawsuit.  *See id.*, 63:25; 64:1-13.  Guercia Jr. then contradicted himself, stating that he told Saravia that once the Saravia Letter was submitted, he would try to get Plaintiff his job back, and nothing more.  *See id.,* 81:21-25; 82:1-12.  Guercia Jr. also testified that he told Saravia that he would have to write a letter advising the Court that he no longer wanted to continue the lawsuit.  *See id.*, 65:21-25.  Guercia Jr. stated that he advised Plaintiff to write the letter based on the letter from the *Velasquez* case, s*ee id.*, 66:15-25, 67:1-10, which he had reviewed between their first and second meetings.  *See id.* 67:3-25, 68:1.  According to Guercia Jr., he did not give Saravia a copy of a letter at this meeting.  *See id.* 70:15-23.

For the third meeting, Plaintiff testified that he met alone with Guercia Jr. at Guercia Jr.'s office on September 9, 2019.  *See id.*, 21:22-23; 22:4-19; 23:11-20.  There, he was given the Saravia Letter by Guercia Jr., signed it, and gave it back to him.  *See id.*, 25:1-9.  Plaintiff neither typed nor directed anyone to type the document, and

he neither mailed nor directed anyone to mail the document to Hassan. *See id.*, 25:21-23; 26: 2-11. Saravia also testified that he was not pressured to sign the letter, *see id.,* 35:1-3, and reiterated that in exchange for signing the letter, he believed he would receive his job back and $4,000. *See id.*, 35: 12-16.

According to Guercia Jr., the third meeting took place on September 10, 2019, *see id.*, 71:8-18, and he agreed that he typed the letter for Plaintiff to sign prior to the meeting. *See id.*, 71:22-25; 72:10-14; 73:17-25; 74: 1-14, 19-25; 76:20-25; 77:1-3. The purpose of the letter was to terminate the case. *See id.* 78:18-21. Guercia Jr. stated that after Plaintiff signed the letter, Saravia took one copy and he kept one for himself. *See id.*, 79 24-25, 80: 1-7. Guercia Jr. testified that he then handed the Saravia Letter to Stollings, who gave it her to her lawyer. *See id.,* 80:8-21.

Stollings' testimony, consistent with Guercia Jr.'s, is that she gave the Saravia Letter to her lawyer. *See id.*, 91:19-25; 92:1. However, she later recanted this testimony and contradicted herself and her fiancé, Guercia Jr., in her post-hearing declaration:

> [w]hile I did testify that I found the letter on my desk . . . After the hearing, I investigated and discovered that in fact I only learned of the existence of the letter after Mr. Hassan contacted my attorney. I did not receive the letter prior to September 24, 2019 nor have any knowledge of its existence. I was mistaken when I testified that I sent it to my attorney. I have searched my records and confirmed that I did not receive the letter prior to September 24, 2019 nor did I ever send it to my attorney. I mistakenly testified it was my recollection that my assistant Ms. Velez sent the letter to my attorney. After investigation I discovered that never happened and I was mistaken about the timeline and circumstances under which I learned that the letter existed. I never intentionally misled the Court or directed my attorney to mislead the Court or withhold any information from the Court.

Stollings Decl. ¶ 21. Pallaci also denies that Stollings gave him the Saravia Letter. Declaration of Vincent T. Pallaci ("Pallaci Decl."), DE [24-1] ¶ 14.

Further, in their post-hearing declarations, Ziskin and Pallaci state that Hassan emailed Ziskin a copy of the Saravia Letter on September 24, 2019. Declaration of Richard B. Ziskin ("Ziskin Decl."), DE [23-1] ¶ 9; Pallaci Decl. ¶ 9. Pallaci further states that the email was addressed to Ziskin, not him, and he only learned of the email when Ziskin replied. *Id.* Finally, in Defendant Guercia Sr.'s declaration, he states that he was provided a copy of the Saravia Letter sometime in late September 2019. Guercia Sr. Decl. ¶ 9. These statements, however, are demonstrably false. The Letter Email, which is a September 24, 2019 communication between counsel, describes the Saravia the letter, but does not attach it. *See* Letter Email.

Neither Plaintiff nor Defendants assert that there was a settlement in their post-hearing briefs. *See* Pl. Mem., 3; Gin-Skye Defs. Mem., 9; Royal Guard Defs. Mem., 4. Thus, there is no settlement for the Court to analyze pursuant to *Cheeks*.

## II. DISCUSSION

### A. <u>Plaintiff's Motion for Sanctions</u>

Saravia moves for sanctions pursuant to Fed. R. Civ. P. 11 and the Court's inherent power based on Defendants' and their counsel's alleged improper conduct, making bad faith misrepresentations to the Court and failing to reveal their involvement with the Saravia Letter prior to the evidentiary hearing. Pl. Mem., 3-5. Plaintiff cites Guercia Jr.'s actions and testimony as well in his application for sanctions. *See id.* at 2-5.

i.     *Fed. R. Civ. P. 11*

A motion for sanctions pursuant to Fed. R. Civ. P. 11 must be made independently from other motions.  *See* Fed. R. Civ. P. 11(c)(2).  Further, the movant must comply with the "safe harbor" provision that requires service of the motion twenty-one days prior to filing with the court.  *See Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,* 682 F.3d 170, 175 (2d Cir. 2012) (citing *Perpetual Sec., Inc. v. Tang,* 290 F.3d 132, 142 n.4 (2d Cir. 2002)) ("The safe-harbor provision is a strict procedural requirement."); *Ajuluchuku-Levy v. Schleifer*, No. 08-cv-1752, 2009 WL 4890768, at *7 (E.D.N.Y. Dec. 15, 2009) (citing *Barash v. Ford Motor Credit Corp*. No. 06-cv-6497, 2007 WL 1791656, at *7 (E.D.N.Y. June 20, 2007)) ("Compliance with the safe harbor provision is mandatory, and failure to do so will result in denial of the motion for sanctions.").  Here, Saravia has not complied with the safe harbor provision, and thus has not met the requirements of a motion made pursuant to Fed. R. Civ. P. 11.  Accordingly, the Court will only consider whether sanctions are appropriate pursuant to the Court's inherent powers.

ii.     *The Court's Inherent Power to Sanction*

The Court "has the inherent power to sanction for improper conduct, which derives from 'the very nature of courts and their need to be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' "  *Steimel v. Inc. Vill. of Rockville Ctr.*, 965 F. Supp. 366, 374 (E.D.N.Y. 1997) (quoting *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991)).  "A court may . . . sanction a litigant pursuant to its inherent authority if there is clear evidence that the . . . conduct [in

9

question] was (1) entirely without color and (2) motivated by improper purposes."
*Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 56 (2d Cir. 2018) (citation and
internal quotation marks omitted), *cert. denied sub nom.*, 139 S. Ct. 1282 (2019).
Conduct is entirely without color when it lacks any legal or factual basis; it is
colorable when it has some legal and factual support, considered in light of the
reasonable beliefs of the attorney whose conduct is at issue." *Wolters Kluwer Fin.
Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). Bad faith may be inferred
"when a party undertakes frivolous actions that are 'completely without merit.' "
*Huebner*, 897 F.3d at 55 (quoting *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 116
(2d Cir. 2000)).

In addition, "the imposition of sanctions pursuant to . . . the Court's inherent
power[ ] requires a finding of bad faith." *Automated Mgmt. Sys., Inc. v. Rappaport
Hertz Cherson Rosenthal, P.C.*, No. 16-cv-4762, 2019 WL 111042, at *3 (S.D.N.Y. Jan.
4, 2019) (citation omitted). "A finding of bad faith, and a finding that conduct is
without color or for an improper purpose, must be supported by a high degree of
specificity in the factual findings." *Wolters Kluwer Fin. Servs.,* 564 F.3d at 114.

Further, "an assessment of attorney's fees is undoubtedly within a court's
inherent power . . . ." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45, 111 S. Ct. 2123,
(1991) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765, 100 S.Ct. 2455, 2463
(1980)). "[A] court may assess attorney's fees when a party has " 'acted in bad faith,
vexatiously, wantonly, or for oppressive reasons.' " *Id.* 45-46, 111 S. Ct. 2123, 2133
(citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258–59, 95

S.Ct. 1612, 1622–23 (1975)).  In awarding attorney's fees as a sanction, " '[b]ad faith' may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986) (quoting *Hall v. Cole,* 412 U.S. 1, 15, 93 S.Ct. 1943, 1951 (1973)).  "[D]ue process requires that courts provide notice and opportunity to be heard before imposing *any* kind of sanctions." *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997) (quoting *In re Ames Dept. Stores, Inc.,* 76 F.3d 66, 70 (2d Cir. 1996)) (emphasis in original).

Moreover, in issuing sanctions under the Court's inherent power, "dismissal or default may be an appropriate remedy where 'there is a showing of willfulness, bad faith, or fault.'" *Walpert v. Jaffrey*, 127 F. Supp. 3d 105, 123 (S.D.N.Y. 2015) (citing *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir.1999)).  However, "[b]ecause a default judgment 'is a "drastic remedy," it "should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions." ' " *Id.* (citing *West,* 167 F.3d at 779–80).  Finally, in deciding whether to issue sanctions pursuant to its inherent power, the Court has broad discretion.  *See United States v. Prevezon Holdings, Ltd.*, 305 F. Supp. 3d 468, 478 (S.D.N.Y. 2018).

Here, Plaintiff seeks legal fees and costs for the time spent since September 24, 2019 dealing with the issues related to the Saravia Letter. *See* Pl. Mem., 1.  In addition, Plaintiff moves to strike Defendants' answers and for a default judgment. *Id.*  In support of his application for sanctions, Saravia asserts that Defendants and their counsel made misrepresentations to the Court regarding their involvement with or knowledge of the Saravia Letter.  *See id.* at 3-5.  Specifically, Plaintiff : (1) cites

Defendants' alleged behavior in the *Velasquez* case and the risk of repeat actions, (2) argues that Defendants' behavior was deceptive, egregious, and fraudulent, and (3) maintains that Defendants continue to "obstruct the judicial process with highly questionable or false testimony." *Id.* at 5.

Initially, the Court will not consider Defendants' alleged conduct in the *Velasquez* case in analyzing whether to impose sanctions on Defendants and their counsel. As set forth above, Plaintiff was given the opportunity to subpoena Mr. Velasquez for the evidentiary hearing to address the letter in that case, but failed to do so, and no other testimony or evidence was submitted in this regard. *See* November 20, 2019 Minute Entry.

a. Defendant Guercia Sr.

As described above, imposing sanctions pursuant to the Court's inherent power requires a finding of bad faith with a high degree of specificity. Defendant Guercia Sr. was present at the hearing, but was not called to testify. *See* Hearing Tr. 37:14-25, 38: 1-10, Guercia Sr. Decl., ¶ 8. In his declaration, he denies involvement with settlement negotiations with Plaintiff, denies offering Saravia anything in exchange to withdraw his lawsuit, and denies involvement with drafting the Saravia Letter. Defendant Guercia Sr. Decl. ¶¶ 10-11, 13-14. No other evidence against Guercia Sr. was offered. Accordingly, sanctions against him are unwarranted and the motion as to him is denied.

b.  Counsel for Defendants

In this matter, there are two potential avenues under which Ziskin and Pallaci could be subject to sanctions pursuant to the Court's inherent power: (1) possible involvement in Guercia Jr.'s meetings with Plaintiff and (2) making misrepresentations to the Court in their declarations.  Neither warrants sanctions.

There is no evidence that either Ziskin or Pallaci was aware of the substance of Guercia Jr.'s meetings with Plaintiff that resulted in the Saravia Letter.  Ziskin and Pallaci explicitly deny involvement with any settlement negotiation or the drafting of the Saravia Letter, and there is no evidence to the contrary.  Ziskin Decl., ¶¶ 7, 8, 10, 11; Pallaci Decl., ¶¶ 7, 8, 10, 11.

Further, although Ziskin's and Pallaci's statements in their declarations that Hassan emailed Ziskin a copy of the Saravia Letter on September 24, 2019 are untrue, *see* Ziskin Decl. ¶ 9; Pallaci Decl. ¶ 9, the email did describe the letter, and so the Court attributes their misstatements to faulty memory and a failure to  check the email they received to confirm that the Saravia Letter was attached, rather than provided to them later.  As a result, the Court finds no showing of the requisite bad faith sufficient to justify sanctions.  Accordingly, the Court declines to impose sanctions against Ziskin and Pallaci.

c. Stollings and Guercia Jr.[2]

On the other hand, the Court finds that sanctions against Guercia Jr. and Stollings are warranted. At the outset, the Court notes that their demeanor at the hearing was not credible. Further, their combined testimony was inconsistent and then later disavowed by Stollings in her subsequent declaration. The result was to render their testimony at the hearing a complete waste of the Court's time, establishing bad faith.

Regarding credibility, Plaintiff testified believably that in exchange for dropping his lawsuit, he understood that he would receive $4,000 and a job. *See* Hearing Tr. 35: 12-16. To the contrary, Guercia Jr. testified that he did not promise Plaintiff anything in exchange for dropping his lawsuit, but agreed to help him see if he could get him his job back. *See id.*, 81:11-25; 82:1-12. Guercia Jr. then contradicted himself—stating that only *once* the document was submitted, he could take him to union hall and try to restore his job back, and that's "all [he] *promised*

---

[2]     Although Guercia Jr. is a non-party, given his close proximity to the litigation, which includes attendance at the November 20, 2019 status conference, *see* Letter Re: ECF Nos. 23-24, DE [25], 2, the fact that he gave orders to Plaintiff both when he worked for Royal Guard and Gin-Skye, *see* Hearing Tr., 29:3-9, and his involvement both with the Saravia Letter, which he testified he wrote acting on behalf of all Defendants, *see id.*, 82:13-23, and negotiating a purported settlement of this litigation, the Court may impose sanctions on him pursuant to its inherent power. *See Amerisource Corp. v. Rx USA Int'l Inc.*, No. 02-cv-2514, 2010 WL 2730748, at *5-6 (E.D.N.Y. July 6, 2010), *aff'd sub nom. New York Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.*, 432 F. App'x 25 (2d Cir. 2011) (holding that a non-party could be sanctioned who was, *inter alia*, the "only person affiliated with [Defendant] to have a substantive role in this litigation . . . ."); *see also Bartos v. Pennsylvania*, No. 08-cv-0366, 2010 WL 1816674, at *7 (M.D. Pa. May 5, 2010) (finding that employee non-party witnesses in an employment discrimination case "are persons with a substantial interest in the outcome of the litigation who have substantially participated in the proceedings," warranting sanctions pursuant to the Court's inherent power for lying in a deposition about their involvement with a disparaging letter written about Plaintiff).

14

him." *See id.* 81:21-25; 82:1-12 (emphasis added). As set forth above, Guercia Jr. was not credible, and the Court concludes that his testimony establishes a bad faith attempt to manipulate Saravia into firing his lawyer and dropping his lawsuit in exchange for no concrete benefit other than possibly helping him get his job back. *See Alvarez v. 894 Pizza Corp.,* No. 14-CV-6011, 2016 WL 4536574 (E.D.N.Y. Aug. 2, 2016), *report and recommendation adopted*, No. 14-CV-6011, 2016 WL 4540817 (E.D.N.Y. Aug. 30, 2016) (finding an employer's requirement that a plaintiff choose between maintaining his job and continuing his lawsuit was taken in bad faith pursuant to the Court's inherent powers "with the purpose of causing a properly filed lawsuit to be withdrawn in return for a promise of continued employment" in an FLSA case).

With respect to inconsistencies, initially, Guercia, Jr. testified that he spoke to Stollings regarding Plaintiff getting his job back between their first and second meetings. *See* Hearing Tr. 60:20-25; 61:1-19. Stollings testified however that she had no knowledge that Guercia Jr. and Saravia had discussions, even at the time she received the Saravia Letter. *See id.* 91:1-10. Then, both Guercia Jr. and Stollings testified that upon receipt of the Saravia Letter she gave it to her attorney, but she later recanted that testimony in her post-hearing declaration. *See* Stollings Decl., ¶¶ 11, 22. Stollings then further asserted in her declaration that she did not learn of the letter until after Hassan contacted her attorney, and that she did not receive the Saravia Letter prior to September 24, 2019. *See* Stollings Decl., ¶¶ 11, 21. However,

as set forth above, her attorney did not receive a copy of the letter in the Letter Email sent on September 24, 2019.

Here, the Court finds that a sanction of attorney's fees and costs for the evidentiary hearing pursuant to the Court's inherent power is appropriate. The purpose of the hearing was to "have all [the parties] in, testify under oath . . . and figure out what happened." Conf. Tr., 8:1-7. In addition to Guercia Jr.'s bad faith actions in attempting to get Plaintiff to fire his lawyer and drop his lawsuit, the combined testimony of Guercia Jr. and Stollings, coupled with Stollings' declaration, did the opposite—giving such inconsistent statements making it impossible to determine what actually happened in their combined attempt to get Plaintiff to cut out his lawyer and discontinue this case.

Finally, both Stollings and Guercia Jr. received adequate notice of the possibility of sanctions and the opportunity to be heard. Regarding notice, at the hearing where both Stollings and Guercia Jr. testified, the Court discussed post-hearing submissions that were to include relief sought. *See* Hearing Tr., 95:1-5. As a result, Plaintiff sought sanctions pursuant to the Court's inherent powers, and referred to both Stollings and Guercia Jr. *See* Pl. Mem.*,* 2-3, 4-5. Further, although Guercia is a non-party, he has aligned himself closely with Defendants in this litigation, including playing a critical role on Defendants' behalf in the events leading up to the evidentiary hearing. He attended the November 20, 2019 status conference and the evidentiary hearing, where he testified under oath that in preparing the Saravia Letter he was acting on behalf of all Defendants. *See* Hearing Tr.*,* 82:13-23.

16

These facts, coupled with his family relationship with Guercia Sr. and engagement to Stollings, establish that Guercia Jr. had the requisite notice that sanctions were being sought against him.

Concerning opportunity to be heard, Stollings testified at the hearing and responded to the motion for sanctions in the Gin-Skye Defendants' Brief where she stated that it "is respectfully asserted that the case should be continued without any legal fees, costs and/or sanctions assessed to Defendants' GIN-SKYE and Stollings." *See* Gin-Skye Defs. Mem., 11.  Moreover, Guercia Jr. also had the opportunity to be heard.  He testified at the hearing and could have submitted his own declaration to the Court along with Defendants' post-hearing briefs, especially given that his father and fiancé are the only individual defendants and were also present at the hearing, but he chose not to.

Accordingly, Stollings and Guercia Jr. are responsible for Plaintiff's attorney's fees and costs incurred in preparation for and attending the hearing.

### d.  Striking of Answer and Entry of Default Judgment

Having concluded that sanctions in the form of costs and fees are appropriate against Stollings and Guercia Jr., the Court declines to strike Defendants' answers and enter a default judgment against them.  This is "the most severe sanction which the court may apply."  *Walpert*, 127 F. Supp. 3d at 123 (citing *Marfia v. T.C. Ziraat Bankasi*, 100 F.3d 243, 249 (2d Cir. 1996)) (internal quotations omitted).  Here a lesser sanction is sufficient.  *See id.*  Accordingly, this part of Plaintiff's motion is denied.

## B. **Court Order Compelling Defendants to Provide More Information**

Without citation to any procedural mechanism warranting such request, Plaintiff asks that this Court "direct both defense counsels [sic] to review the issues herein and the testimony of Defendants and their witnesses in this case and to provide affidavits concerning all those involved with the [Saravia Letter] and the nature of he [sic] involvement and a timeline of defense counsels [sic] knowledge of the [Saravia Letter] including a chronology from August 2019 to present."    *Id.* Although Plaintiff does not clearly explain the basis for his application, the Court assumes it is his belief that the hearing did not sufficiently address Defendants' improper conduct.

The Court denies Saravia's request that defense counsel be compelled to provide more information to the Court.  As set forth above, a full evidentiary hearing took place on January 9, 2020.  Plaintiff was given the opportunity to cross-examine those witnesses who testified and to subpoena others.  *See* November 20, 2019 Minute Order; Hearing Tr.  There is no reason to pursue this matter further.

Accordingly, the Court denies Plaintiff's request for an order directing defense counsel to provide more information.

## C. **Defendants' Motions**

Defendants move to dismiss this matter without prejudice and/or request that Saravia confirm whether he is proceeding with Hassan as is attorney.  *See* Gin-Skye Defs. Mem., 2; Royal Guard Defs. Mem., 1.   Further, the Royal Guard Defendants move to substitute Guercia Jr. for Guercia Sr. as a defendant.  For the reasons set forth below, Defendants' motions are denied.

i.      *Case Dismissal and Hassan's Representation of Saravia*

Defendants do not cite a procedural mechanism under which they seek dismissal of this matter without prejudice.  Case dismissal is generally governed by Fed. R. Civ. P. 41.  Fed. R. Civ. P. 41(a)(1) allows a plaintiff to voluntarily dismiss a case by either filing a notice of dismissal before the opposing party serves an answer or motion for summary judgment, or by filing a stipulation of dismissal signed by all parties who have appeared. *See* Fed. R. Civ. P. 41(a)(1).   Otherwise, a plaintiff's request for dismissal of an action can only take place by court order, on terms that the court considers proper. Fed. R. Civ. P. 41(a)(2).   Further, a case can be dismissed if a plaintiff fails to prosecute or comply with the Federal Rules of Civil Procedure or a court order.  Fed. R. Civ. P. 41(b).

Here, Plaintiff has not filed a notice of dismissal or a stipulation of dismissal with the Court.  Further, Saravia has continued to prosecute his case, and has not failed to comply with the Federal Rules of Civil Procedure or a court order. Accordingly, Defendant's request that this case be dismissed without prejudice is denied.

Defendants further request that "[p]laintiff should be given thirty (30) days to confirm whether . . .  he will be proceeding with his current counsel and/or obtaining new counsel."  Gin-Skye Defs. Mem., 2; Royal Guard Defs. Mem., 1.  In support of their request, Defendants argue that Plaintiff terminated his attorney by the Saravia Letter and assert that the hearing transcript does not demonstrate that Saravia remains represented by Hassan.  Gin-Skye Defs. Mem., 9; Royal Guard Defs. Mem.,

4. The Court disagrees.  Plaintiff confirmed that he is represented by his attorney at the evidentiary hearing, where he appeared as a witness with his attorney.  *See* Hearing Tr., 11-12.

Accordingly, Defendants' request that Plaintiff must confirm his representation by Hassan is denied.

### ii.    *Royal Guard Defendants' Motion to Amend*

The Court now turns to the Royal Guard Defendants' motion to amend.  The Royal Guard Defendants move to amend the caption of the case to substitute Guercia Jr. as a defendant for Guercia Sr.

"A plaintiff's request seeking permission to modify an official caption is properly brought under Federal Rule of Civil Procedure 15, which governs amendment of the pleadings."  *Doe v. Greiner*, 662 F. Supp. 2d 355, 359 (S.D.N.Y. 2009) (citing *Hernandez–Avila v. Averill*, 725 F.2d 25, 28 n. 4 (2d Cir.1984)). Pursuant to Fed. R. Civ. P. 15(a), courts have discretion to allow parties to amend their pleadings "when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also Amaya v. Roadhouse Brick Oven Pizza, Inc.*, 285 F.R.D. 251, 253 (E.D.N.Y. 2012).  Motions to amend that seek to add new parties are "technically governed by Rule 21, which provides that the court may at any time, on just terms, add or drop a party, rather than Rule 15(a)."  *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 268 F.R.D. 160, 165 (E.D.N.Y. 2010) (internal quotation marks and citation omitted).  Rule 21 is intended to allow joinder of a person "who, through inadvertence, mistake, or some other reason has not been made a party and whose presence as a party is later found

necessary or desirable." *Gale v. Smith & Nephew, Inc.*, No. 12-cv-3614, 2013 WL 9874422, at *5 (S.D.N.Y. Sept. 13, 2013) (citation omitted).  In deciding whether to permit the addition of a party under Rule 21, courts apply the "same standard of liberality afforded to motions to amend pleadings under Rule 15." *Jaigua v. Kayafas Contracting Co. Inc.*, No. 18-cv-1941, 2019 WL 1115025, at *2 (E.D.N.Y. Mar. 11, 2019) (internal quotation marks and citation omitted); *see also State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 246 F.R.D. 143, 146 (E.D.N.Y. 2007) ("It is generally accepted that no material difference exists between the standards articulated by Rules 15(a) and 21, and, as such, where parties satisfy the requirements under Rule 15(a) for leave to amend, they will generally be permitted to add parties under Rule 21.") (internal quotation marks, citation and alteration omitted).  In general, parties should be allowed to amend their pleadings to add new parties unless there is evidence of "undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility." *Bryant v. Carlisle Carrier Corp.*, No. 13-cv-578, 2014 WL 712592, at *1 (E.D.N.Y. Feb. 25, 2014) (quoting *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995)); *see also Bernhard v. Cent. Parking Sys. of New York, Inc.*, 282 F.R.D. 284, 287 (E.D.N.Y. 2012).

The Royal Guard Defendants filed a motion to substitute or amend the case caption to replace "Ralph Guercia," with Guercia Jr.'s full name.   *See* DEs [28]-[35].

As set forth above, Fed. R. Civ. P. 15(a)(2) authorizes a *party* to amend its pleading.  Further, Fed. R. Civ. P. 21 gives the Court discretion to add or drop a party "on just terms."  Fed R. Civ. P. 21; *see Fair Hous. Dev. Fund Corp. v. Burke*, 55 F.R.D.

414, 419 (E.D.N.Y. 1972).  Here, the Royal Guard Defendants are moving to amend *another* party's pleading.  The motion is improperly brought.  If Guercia Sr. wishes to be dismissed from the litigation, he is free to make an appropriate motion at any time.  Accordingly, the Royal Guard Defendants' motion to amend the case caption is denied.[3]

## IV.  CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part Plaintiff's post-hearing requests for relief.  Specifically, the Court grants Plaintiff's motion for sanctions in the form of attorneys' fees and costs against Stollings and Guercia Jr., but denies both Saravia's motion to strike Defendants' answers and enter default judgment against them, and Saravia's request that defense counsel be compelled to provide additional information to this Court.  Moreover, the Court denies Defendants' post-hearing requests that the case be dismissed without prejudice and/or that Plaintiff confirm that he is represented by Hassan.  Further, the Royal Guard Defendants' motion to amend the case caption is denied.

As described above, Stollings and Guercia Jr. will pay Plaintiff's attorneys' fees and costs incurred in preparing for and attending the hearing on January 9, 2020.  Plaintiff's moving papers in support of his fee application will be served on or before

---

[3]     In reaching this conclusion the Court notes the various letters filed concerning who is the properly named defendant and how this may impact discovery practice.  *See* DEs [25], [39]-[40].  Guerica Sr. has been a Defendant since the Royal Guard Defendants' Answer on his behalf. *See* DE [6].  This went unchallenged and the litigation proceeded in the normal course.  The current attempt to switch parties mid-stream, without the consent of all sides, including Guercia Jr., or proper motion practice, is unavailing, and discovery should proceed accordingly.

October 2, 2020 and Opposition will be served on or before November 2, 2020.  Reply papers will be served on November 16, 2020 and Plaintiff will file all papers concerning the fee application on November 17, 2020.

Dated:       Central Islip, New York
              September 2, 2020

**SO ORDERED**

 /s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge